**FILED**
2012 Feb-01 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA


IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DONNA MCMILLIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-1308-M |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Donna McMillian, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether she has a severe impairment;

2

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

      In the instant case, the ALJ, Jerry M. Lang, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff alleges she is disabled due to pain resulting from osteoarthritis. The plaintiff testified at her ALJ hearing that she experienced pain at an eight out of ten during an average day. R. 38. She testified that in addition to her pain medication, she attempted to alleviate her pain by spending seven hours each day in her recliner. R. 36. The ALJ applied the Commissioner's Regulations in considering the plaintiff's pain by considering seven factors set forth in the Regulations. See, 20 C.F.R. § 404.1529(c)(3). In order to reach this stage in the evaluation of plaintiff's pain, the Regulations require the claimant to have "a medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms, such as pain...." 20 C.F.R. § 404.1529(c)(1). Therefore, the ALJ implicitly found the plaintiff met the Eleventh Circuit pain standard

5

by considering the plaintiff's subjective complaints and making a credibility determination. R. 24-25.

In making his credibility determination, the ALJ relied upon alleged inconsistencies between her hearing testimony, and her "Daily Activities Questionnaire" completed in connection with her application:

> The claimant testified that she "lived" in a recliner, was "constantly" on a heating pad, and did no grocery shopping, alleging that an elderly friend of her ex-husband had moved in with her to "take care of her." However, she was not totally forthcoming at the hearing regarding her daily activities, as in previously submitted written statements (Exhibit 4E), the claimant stated that she independently attended to all of her personal care needs, including administering her own medication on a regular basis, preparing meals, shopping every 1-2 weeks without assistance, going "to town" to pay her bills, reading, watching television, going for walks, sitting outside in "pretty weather, " tending to a pet cat, and visiting with friends and/or family members during which she cooked "out," went fishing, played with their animals etc.

R. 24. The plaintiff's answers on her Daily Activities Questionnaire were given over two years prior to the time of her ALJ hearing. Any inconsistencies in her testimony, therefore, might represent a change in her condition, rather than a lack of truthfulness. Additionally, the Daily Activities Questionnaire does not unambiguously contradict her testimony. For example, on the questionnaire plaintiff indicated in one section that she shopped every two weeks and needed no help. R. 115. This is the portion of the questionnaire relied upon by the ALJ. However, she also stated in a later section of the questionnaire that someone went with her when she shopped for groceries. R. 116. The plaintiff indicated that this person helped her buy, load, unload and put away the

groceries. R. 116. The plaintiff's questionnaire also contains answers indicating that she could not sweep or mop. R. 115. She also indicated an inability to pay attention to radio or television programs at times "due to the pain level." R. 115. She also indicated that due to her health, and the associated pain, it was difficult to schedule social outings. R. 116. The plaintiff's hearing testimony and answers given on her Daily Activities Questionnaire relate to different periods of time and are not totally inconsistent with one another. That there may have been some minor inconsistencies in her statements does not provide substantial support for the ALJ's refusal to credit the plaintiff's pain testimony.

      Moreover, the activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

The only other reason given by the ALJ for discrediting the plaintiff's pain testimony was that "the claimant's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are not totally credible and describe limitations more severe than are shown in the objective evidence."  R. 25.  Earlier in his decision, the ALJ stated that "it appears to this adjudicator that when considering repeatedly negative diagnostic testing, the claimant's allegations of 'constant' pain are overstated."  R. 20. However, a review of the medical evidence summarized in the ALJ's decision shows that the objective medical evidence strongly supported the plaintiff's allegations of disabling pain.  The ALJ noted in his decision the plaintiff had been diagnosed with "paresthesia,

mechanical lumbar spine and cervical spine pain...." R. 20. He also noted two MRI scans, one of which "was interpreted as consistent with degenerative disc disease and degenerative arthritis at C4-C6. R. 20. The other MRI showed "chronic T-12 compression deformity, with mild facet joint arthritis." R. 20. Other objective medical evidence supporting the plaintiff's pain allegations noted by the ALJ included tenderness to palpation in the cervical, thoracic and lumbar spine; moderate limitations in the plaintiff's cervical and lumbar range of motion; and bilateral lower extremity numbness and tingling. R. 20 The ALJ also noted that plaintiff's treating physician, Dr. Conner, prescribed the following medications on an ongoing basis: Elavil, Lexapro, Ambien, Valium, Fiorcet tabs, immediate release morphine sulfate (MSIR), and Oxycontin. R. 24.

The medical evidence summarized by the ALJ shows a longitudinal history of treatment for severe pain, including MRI scans showing degenerative disc disease and a chronic compression deformity in the thoracic spine. The record also shows a long history of prescriptions for narcotic pain medications by Dr. Conner, who would not have prescribed such medications unless she believed the plaintiff suffered severe intractable pain. Therefore, contrary to the ALJ's assertion, the objective medical testimony supports, rather than contradicts plaintiff's pain testimony.

## CONCLUSION

The ALJ's articulated reasons for rejecting that testimony are not supported by substantial evidence, and accordingly, it must be accepted as true. Because the

plaintiff has severe intractable pain, which requires her to remain in a recliner for most of the day, she would be unable to perform any gainful activity. Although neither the ALJ nor the plaintiff's attorney questioned the vocational expert about the impact of such pain, and a need to recline for most of the day, the court takes judicial notice of the fact that vocational experts invariably testify that such pain would eliminate all jobs. Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

      DONE this 1 February 2012.

                                            UNITED STATES DISTRICT JUDGE
                                                  J. FOY GUIN, JR.